**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **::** | **CRIMINAL INDICTMENT** |
| | **::** | |
| **v.** | **::** | **NO. 1:10-CR-352-01-JEC/AJB** |
| | **::** | |
| **JOHN DENNIS TAN ONG,** | **::** | |
| | **::** | |
| **Defendant.** | **::** | |

**ORDER FOR SERVICE OF**
**REPORT AND RECOMMENDATION**

Attached is the Report and Recommendation ("R&R") of the United States

Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and

N.D. Ga. CrR. 58.1(A)(3)(a), (b).  A copy of the R&R and this order shall be served

upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections to the

R&R within **fourteen (14)** days of service of this Order.  Should objections be filed,

they shall specify with particularity the alleged error(s) made (including reference by

page number to the transcript if applicable) and shall be served upon the opposing

party.  *See United States v. Gaddy*, 894 F.2d 1307, 1315 (11th Cir. 1990).  The party

filing objections will be responsible for obtaining and filing the transcript of any

evidentiary hearing for review by the District Court.  If no objections are filed, the

AO 72A
(Rev.8/8
2)

R&R may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

Pursuant to 18 U.S.C. § 3161(h)(1)(H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act ("the Act"), whether or not objections are actually filed.** If objections to this R&R are filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time all time between the filing of the R&R and the submission of the R&R, along with any objections, responses and replies thereto, to the District Judge. 18 U.S.C. § 3161(h)(1)(D), (H); *Henderson v. United States*, 476 U.S. 321, 331 (1986); *United States v. Mers*, 701 F.2d 1321, 1337 (11th Cir. 1983). The Clerk is **DIRECTED** to submit the R&R with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this   29th   day of    November   , 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **::** | **CRIMINAL INDICTMENT** |
| | **::** | |
| **v.** | **::** | **NO. 1:10-CR-352-01-JEC/AJB** |
| | **::** | |
| **JOHN DENNIS TAN ONG,** | **::** | |
| | **::** | |
| **Defendant.** | **::** | |

## UNITED STATES MAGISTRATE JUDGE'S
## NON-FINAL REPORT AND RECOMMENDATION

This matter is before the Court on the Government's motion to revoke the order granting Defendant Ong pretrial release. [Doc. 11]. For the following reasons, the undersigned **RECOMMENDS** that the motion be **GRANTED**.

### *Introduction*

On August 17, 2010, a Grand Jury in this District indicted Ong and Ronnel Rivera[1] for conspiring to violate the Arms Export Control Act, (22 U.S.C. § 2778 *et seq.*), in violation of 18 U.S.C. § 371, (Count One); violation of the Arms Control Export Act, (22 U.S.C. § 2778(b)(2), (c)), and its implementing regulations

---

[1]    Mr. Rivera has not been apprehended.    He resides in the Philippines. [Doc. 24 at 2 n.1].

(22 C.F.R. §§ 121.1, 123.1, 127.1), (Count Two); and conspiring to violate the money laundering laws, in violation of 18 U.S.C. § 1956(h), (Count Three).  [Doc. 1].

Ong was arrested in the District of Hawaii on September 17, 2010.  [Doc. 10]. He appeared before United States Magistrate Judge Leslie E. Kobayashi in that District on September 20, 2010.  (*See* D. Hawaii Docket Sheet at Doc. 17-5 at 2, entry 2).  The government moved to detain Ong, (*id.* at entry 3).  On September 23, 2010, Judge Kobayashi conducted a detention hearing, after which she ordered that Ong be released on a $25,000 cash bond and placed him into the custody of his wife, Pauline Ong, of Burnaby, British Columbia.  Judge Kobayashi delayed Ong's release until an ICE detainer was withdrawn and/or Ong was released from ICE custody.  (*Id.*, Doc. 17-5 at 3, entry 6).

On September 27, 2010, the government filed the instant motion.  [Doc. 11]. Judge Kobayashi's order of release was stayed by order of United States District Judge William S. Duffey, Jr.  [Doc. 12].[2]  Ong was transferred to this District.  The matter was

_____

[2]      The deadlines established by Judge Duffey's Order were amended on September 30, 2010.  [Doc. 15].  The revocation hearing before Judge Duffey subsequently was cancelled when the case was assigned to Chief United States District Judge Julie A. Carnes.  [*See* Dkt. Entry dated 10/20/2010].

2

referred to the undersigned for a hearing and preparation of a Report and Recommendation.[3]

### Facts

The Pretrial Services Report (PTSR) reflects that Ong is 36 years old and was born in the Phillippines.  He moved to Canada at age 12 and became a Canadian citizen.  He has lived in British Columbia for 24 years.  He has resided since August 2010 at

---

[3]     Title 18 U.S.C. § 3145(a)(1) provides that if a person is ordered released by a magistrate judge from another federal district, the government may file in this court (the court having original jurisdiction over the offense) a motion to revoke the order of release.  *Id.*; *see, e.g., United States v. Torres*, 86 F.3d 1029, 1301 (11th Cir. 1996) (plain language of § 3145 dictates that district court with original jurisdiction over the offense, the prosecuting district, was only proper one to review release order issued by magistrate judge from another district where defendant had been arrested).  Moreover, review under § 3145(a)(1) is to be conducted by a district judge.  *Torres*, *id.* (citing *United States v. Evans*, 62 F.3d 1233, 1235 (9th Cir. 1995)); *see also United States v. Cisneros*, 328 F.3d 610, 615 (10th Cir. 2003).  The District Court must conduct a *de novo* review of the release decision.  *United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985); *United States v. Niles*, 874 F. Supp 1372, 1374 (N.D. Ga. 1994) (Hull, J.) (citing *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988)).  Review by the district court contemplates an "independent consideration of all facts properly before it," *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987) (citing *Hurtado*, 779 F.2d at 1480-81.  If the district court concludes after a careful review of both the parties' papers and the evidence presented at the detention hearing that the evidence supports the magistrate judge's findings of fact and if the district court concludes that the magistrate judge correctly applied the law, "[t]he court may then explicitly adopt the magistrate's pre-trial [release] order."  *King*, 849 F.2d at 490.  However, if necessary to the resolution of an essential issue of fact, the district court may marshal further evidence by convening a hearing.  *Id.* at 491.

AO 72A
(Rev.8/8
2)

801-6188 Wilson Avenue in Burnbary, British Columbia, with his wife, Pauline, whom he married in 2004. They are purchasing their home. PTSR at 1, 2. Ong's parents and brother reside in the Phillippines, and a sister resides in both Canada and the Phillippines. *Id.*

At the hearing before the undersigned, the government explained that on September 17, 2010, Ong left Vancouver, Canada, en route to Honolulu. At the Vancouver International Airport, U.S. Customs and Border Patrol (CBP) officers admitted him to the United States on a non-immigrant visa. The instant indictment was sealed, so these CBP officers were unaware of the pending charges. However, upon Ong's arrival at the Honolulu International Airport, he was arrested on the arrest warrant issued following the return of the indictment. ICE lodged a detainer with the U.S. Marshal. [*See also* Doc. 24 at 2-3].

The PTSR states that Ong has no immigration status in the United States, and is the subject of an ICE detainer. ICE agents seized Ong's Canadian passport upon his attempted entry into the United States in Hawaii. PTSR at 2.

4

Ong told Pretrial Services that he has been employed as an automobile exporter since April 2007 and earns $2,500 per month.  *Id.*[4]

At the hearing before the undersigned, the government described the acts underlying the charges in the indictment, including its contention that the items Ong was selling were various parts for machine guns, Govt. Exh. 1, which required appropriate export licenses and some of which were destined for Mindanao Island in the Phillippines, a site as to which the U.S. Department of State had issued a travel warning due to "continuing threats due to terrorist and insurgent activities. . . ." Govt. Exh. 2.[5]

However, the government's main argument at the evidentiary hearing was that Ong was a risk of nonappearance due to his extensive ties to the Phillippines, his frequent travel to that nation and other countries (Thailand, the Netherlands, France, Turkey, Egypt and China (Hong Kong and Macao), his lack of lawful status in the

---

[4]     The PTSR recommended that Ong be released on conditions which mirrored those imposed by Judge Kobayashi.  PTSR at 4.

[5]     At the hearing, Ong argued that the evidence demonstrated that he did not want to export any item which did not have a proper export license.  *See, e .g.*, Deft. Exh. 2.  The government argued that notwithstanding any reticence on Ong's behalf, he later arranged for shipment of goods which required, but did not have, export licenses.

5

United States, his likely removal from the United States because he was not admitted to this country, and the difficulties of insuring his successful extradition from Canada in the event that the release order was affirmed and Ong was allowed to reside in Canada.

In response, Ong offered to increase the amount of the bond required by Judge Kobayashi.  He also presented the testimony of his brother-in-law, Daniel Ho, who resides in British Columbia and is employed as an importer of Chinese furniture, primarily as to Ong's decent character; Juanita Castenada, a medical doctor in Ohio who offered to post the equity in her home as further security for Ong's bond; and Pauline Ong, the defendant's wife, a registered nurse.  Ong also presented a series of letters of relatives and friends attesting to his good character and trustworthiness. Deft. Exh. 2.  He further agreed to waive extradition from Canada and sign any documents needed to accomplish a valid waiver.

In response, the government presented a legal opinion letter from the Canadian Department of Justice, opining that the Canadian Extradition Act does not recognize prospective waivers of extradition.  Govt. Exh. 6.

The undersigned sought briefs from the parties as to whether there was a possibility that Ong could be granted a "conditional release."  Under this scenario, Ong

6

would be released to ICE custody.  If immigration authorities granted him a bond pending removal proceedings, then Ong would be required to reside in Atlanta under electronic monitoring.  However, he would be returned to Marshal's custody if the immigration authorities attempted to remove him from the United States.  The Court also sought additional support from Ong that prospective waivers of extradition executed in United States courts were enforceable in extradition proceedings in Canada.

### Contentions of the parties

The government argues that the Court's suggestion of a conditional bond is not authorized under federal law.[6]  It contends that if Ong is subject to removal, immigration authorities must remove him from the United States, and he can re-enter the United States only subject to the parole authority exercised by the Attorney General

---

[6]     The government notes that Ong is either removable from or inadmissible to the United States as a result of the instant indictment, since an alien who has engaged in "any activity to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information" is subject to removal, 8 U.S.C. § 1227(a)(4)(A)(i), and an alien for whom there was a reason to believe that he had been engaged in or been a knowing conspirator with others in an offense described in 18 U.S.C. § 1956 is inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(I).  [Doc. 24 at 5].  It also contends that he is not subject to relief from removal because he is not a lawful permanent resident of the United States and does not have a close relative who is either a United States citizen or lawful permanent resident, nor could he plausibly claim that he would be subjected to persecution or torture if he was returned to Canada.  [*Id.* at 6 n.4].

7

or Secretary of the Department of Homeland Security (through CBP).  Although

conceding that it could find no authority one way or another, the government argues

that any "conditional release" order would be akin to the Court asking the Attorney

General or an administrative agency to take a specific action which is not allowed by

law.  [Doc. 24 at 9].  Moreover, the government argues that since Congress has

legislated that no court can review alien parole decisions, the District Court lacks

authority to review any denial of parole to Ong and, therefore, "it follows that the

District Judge would also lack authority to order CBP to grant Ong parole in the first

instance."  [*Id.* at 14].  The government then argues that the Court has no authority to

order ICE to return Ong to U.S. Marshal's custody, because once Ong was

administratively ordered to be removed, he must be detained by ICE pending his

removal, and "parole, supervised release, probation, or possibility of arrest or further

imprisonment is not a reason to defer removal."  8 U.S.C. § 1231(a)(4)(A).  [Doc. 24 at

16].[7]  As a result, the government argues that the Court has no authority to order that

_____

[7]      Neither party has addressed 8 C.F.R. § 215.3, which provides that "[t]he
departure from the United States of any alien within one or more of the following
categories shall be deemed prejudicial to the interests of the United States: . . . (g) Any
alien who is needed in the United States as a witness in, or as a party to, any criminal
case under investigation or pending in a court in the United States: Provided, That any
alien who is a witness in, or a party to, any criminal case pending in any criminal court
proceeding may be permitted to depart from the United States with the consent of the

8

Ong be conditionally released subject to his return to U.S. Marshal's custody if he was to be removed from the United States.

Ong agrees that the Court has no authority to issue an order directing that either ICE or CBP take any action regarding him. [Doc. 27 at 1]. Nonetheless, he argues that even if he is subject to removal as claimed by the government, he should be paroled into the United States. He argues that if a witness may be paroled into the country pursuant to 8 C.F.R. § 212.5(b), his continued detention similarly is "not in the public interest," *id.* § 212.5(b)(4), (5), and therefore he should be paroled into the United States so he can be present to stand trial. [Doc. 27 at 2]. He also contends that since the Attorney General has the discretion to grant him parole and the Department of

_____

appropriate prosecuting authority, unless such alien is otherwise prohibited from departing under the provisions of this part." As a result, the Court is hesitant to discuss the regulation's application in this case, or whether, as it appears at first blush, this regulation is inconsistent with 8 U.S.C. § 1231(a)(4)(A)'s statement that "parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal."

However, the Court notes that all of the cases which have discussed § 215.3 involved aliens who were "present" in the United States at time of their proposed removal, and not, as here, where the defendant was not admitted to the United States. *See United States v. Perez*, No. 08-cr-20114-KHV-1, 2008 WL 4950992, *2 (D. Kan. Nov. 18, 2008); *United States v. Lozano*, No. 1:09-CR-158-WKW [WO], 2009 WL 3834081, 6 n.9 (M.D. Ala. Nov. 16, 2009); *United States v. Campos*, Cr. No. 2:10-mj-6-SRW, 2010 WL 454903, *3 (M.D. Ala. Feb. 10, 2010).

9

AO 72A
(Rev.8/8
2)

Homeland Security also has authority to parole him, it is fundamentally unfair to deny him bond because of the government's refusal to exercise its own authority to allow him to remain in the United States.  He further contends that to deny him bond based on the government's threats to deport him makes a mockery of the right to bond rooted in the Constitution.  [*Id.* at 3].

As to the enforceability of extradition waivers, Ong states that no Canadian precedent discusses the validity or invalidity of such a waiver.  [Doc. 23 at 1].  He therefore argues that if he waived his right to challenge extradition in this Court, such a waiver would be upheld in Canada's courts because such a waiver was knowingly made and fulfills the requirements of Canadian law.  [*Id.* at 2].

The government responds that Ong has not pointed to any Canadian case law supporting his position that he can validly waive his right to challenge extradition from Canada prospectively.  It contends that Canadian law only allows a waiver of a challenge to extradition after an extradition request is made to Canada and the person sought to be extradited appears in a Canadian court pursuant to that request.  [Doc. 26 at 2, 5-7].

10

*Discussion*

First, the Court agrees with the parties that immigration authorities, whether the Attorney General or someone acting under the authority of the Secretary of the Department of Homeland Security, cannot be compelled to return Ong to U.S. Marshal's custody in the event he is ordered by immigration authorities to be removed from the United States.  The District Court has no authority to review removal decisions involving aliens, *De La Teja v. United States*, 321 F.3d 1357, 1365 (11th Cir. 2003), nor determinations as to whether an alien is subject to parole or temporary entry into the United States.  *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003).   *Cf. United States v. Lozano*, No. 1:09-CR-158-WKW [WO], 2009 WL 3834081, *4 n.4 (M.D. Ala. Nov. 16, 2009) (observing that no statutory or other authority permits court to direct Attorney General to stay or interrupt defendant's deportation proceedings) (citing 8 U.S.C. § 1231 and quoting 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.")).  Accordingly, this Court has no authority to enforce an order requiring the

11

return to U.S. Marshal's custody of a to-be-removed alien-defendant.   Therefore, "conditional release" is not a viable option.

Second, the Court agrees with the government's position that an extradition waiver signed in the United States and intended to apply prospectively to extradition proceedings in Canada is likely to be unenforceable.   *See In re Extradition of Pelletier*, No. 09-22416-MC2009 WL 3837660, *4 (S.D. Fla. 2009) (noting that "while Pelletier has offered to execute a waiver of extradition from Canada, it appears that such a waiver would have no effect in a Canadian court, and that if the United States attempted to extradite Pelletier from Canada, Pelletier would have to waive extradition anew in the Canadian proceeding" and citing to exhibits interpreting Sections 70 through 72 of the Canadian Extradition Act (1999)).   Defendant has not rebutted the government's showing through the Canadian Department of Justice that such a prospective waiver would be held invalid.   Although the government has not shown how the Canadian courts treat prospective waivers, the Canadian Department of Justice opinion, which takes a position arguably inimical to it s interests, is persuasive for purposes of this Court's Bail Reform Act analysis.

In any event, even if Ong were released on Judge Kobayashi's bond and was thereafter removed to Canada, there is little assurance that Ong would not travel to the

12

Philippines (where he has extensive familial and business ties) or other places where he has business relationships.  Therefore, the Court doubts that the Canadian courts would have to confront the prospective waiver issue in this case.

Third, as to Ong's argument that it is unfair that the same government that argues he is a flight risk due to his alien status refuses to parole him into the United States where he could reside on release under strict bail conditions, he has pointed to no authority that (1) allows the Court to compel his conditional entry into the United States or (2)  mandates a charged defendant's release on bail due to the paradox of one arm of the government seeking to prosecute him while another arm of the government seeks to deport him.  In the absence of a constitutional claim, Ong's unfairness argument is not properly at issue before this Court.  The only constitutional claim Ong makes is a constitutional right to bail, but where, as here, the risk of flight is unusually high, there is no constitutional right to bail.  *United States v. Acevedo-Ramos*, 755 F.2d 203, 206 (1st Cir. 1985).  The Court also observes that the quandary presented by Ong's situation is identical to one the Court faced in *United States v. Anh Ngoc Nguyen*, No. 1:05-cr-196-TWT-JMF.  In that case, the defendant (charged with money laundering) was released on bond in this District and was allowed to reside in Ontario, Canada, under strict supervision of Canadian probation officers.  (*See* Docs. 12 & 15 in 1:06-cr-196).

13

He complied with every single condition imposed by the Court.  However, despite being ordered to appear in this Court, Nguyen was unable to re-enter the United States *because* of the pendency of the charges against him.  Ultimately the government moved to dismiss the indictment against Nguyen.  The Court is unwilling to re-experience that release experiment again and hope for a different conclusion.

Fourth, as noted, the District Court reviews Judge Kobayashi's release order *de novo* in determining whether the order should be sustained or revoked.  *Hurtado*, 779 F.2d at 1471.  The Bail Reform Act favors the release of a defendant, and on the subject of nonappearance, says, "The judicial officer shall order the pretrial release of the [defendant on an appearance bond] . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person. . . ."  18 U.S.C. § 3142(b).  In that event, the Court is required to release the defendant on the least restrictive of conditions enumerated in § 3142(c)(1)(B).  The government bears the burden to show that there is no condition or combination of conditions that would "reasonably assure" the defendant's appearance at trial or the safety of the community.  18 U.S.C. § 3142(c), (f).  With respect to failure to appear, such a showing must be made by a preponderance of evidence, *United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988); the government's burden to show danger to the community is by clear

14

and convincing evidence. *United States v. Quartermaine*, 913 F.2d 910, 915 (11th Cir. 1985). The Act specifies the factors to be considered by the Court as (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and whether at the time of the current offense or arrest, the person was on a conditional release; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)-(4). There is no "presumption" arising from the nature of the charges in this case that the defendant should be detained. 18 U.S.C. § 3142(e). Alien status is not a listed factor or criterion.

Applying the § 3142(g) factors, first, while the crimes charged are not crimes of violence, the Export Control Act charges concern the transfer of machine gun parts outside the United States without the requisite licenses. Second, while the defendant

15

may have stated earlier in the negotiations with the undercover agent that he did not want to export un-licensed goods, he later arranged for the shipment of those very same items despite their un-licensed status.  Third, while Ong has substantial family ties, the persons he is close to are not in this country.  Those persons in this country who have faith in him, Deft. Exh. 2, are not the sort of relations upon which this Court typically relies to insure the appearance of a defendant for trial, and in any event, they are not in this District.  As to Ong's history and characteristics, the Court finds significant his lack of community ties to anywhere in the United States and his significant ties not only to Canada but to the Philippines.  Fourth, while Ong is not a danger to any person or the community, the Court is concerned that Ong advised another on how to keep a material witness outside the jurisdiction of the court.  Govt. Exh. 5.

Still, the critical issue in this case, and one upon which this Court's recommendation is based, is how to deal with the ICE detainer against Ong, his lack of status in the United States and the likelihood that he will be subject to an order of removal from the United States.  A number of courts have addressed risk of non-appearance under the Bail Reform Act in the context of the government's stated intention to deport a non-citizen defendant.  In *United States v. Montoya-Vasquez*, No. 4:08CR3174, 2009 WL 103596 (D. Neb. Jan. 13, 2009), the court held that it was

16

prohibited from speculating on the " 'risk' that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him," since the " 'risk' of an order of removal is one over which this court has no control[ ]."  2009 WL 103596 at *4.  In *Montoya-Vasquez*, the defendant had been in the United States (albeit illegally) for 10 continuous years, and resided with his wife of 20 years, his five children (who were United States citizens), and his father (who was applying for lawful residency).  The *Montoya-Vasquez* Court also held that the term "failure to appear" in § 3142 was the same as used in 18 U.S.C. § 3146, which penalizes "failure to appear" by virtue of the defendant's own volition, action and will, not through the actions of the government or its agents.  2009 WL 103596 at *5.  The court therefore denied the government's detention motion and set conditions of release.

In *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108 (D. Minn. 2009), the defendant had come to the United States with his mother at age 5 and was married to an American citizen, but as a result of the current charge (possession of a weapon by an illegal alien) an ICE detainer had been placed upon him.  The court noted that Congress did not explicitly list an ICE detainer as a factor to consider in its detention/release decision and its existence was "an externality not under defendant's control."  *Id.* at 1110.  The court concluded:

17

The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis. This Court ought not run interference for the prosecuting arm of the government.

\* \* \* \*

While the defendant's illegal status must be considered, the mere presence of an ICE detainer is not a determining detention factor. Absent this detainer, there would be no question: the defendant should be released pending trial. The Court finds the ICE detainer does not sufficiently change this calculus.

*Id.* at 1111-12. As a result, the court set a bond for the defendant.

On the other hand, in *Lozano*, the District Court upheld the Magistrate Judge's detention of the defendant. The defendant was charged with illegal reentry following removal. The magistrate judge found that although the defendant was neither a risk of flight (because he would be detained by ICE if released on bond from court) nor a danger to the community), she nonetheless found that he was an unreasonable risk of non-appearance at trial because he would likely be deported by ICE prior to any criminal trial. 2009 WL 3834081 at *2. The District Court recognized the paradox

18

presented by the pending removal of the defendant by one arm of the government and

the prosecution of him by another agency of the same government but noted that

> [n]o version of the Bail Reform Act has specifically addressed a factual scenario under which release from the custody of the United States Marshals Service results in further detention and a possibility of avoiding criminal prosecution altogether.  The current Act, as well as its predecessor, was drafted in such a way so as to prevent needless detention and to protect the constitutional rights of criminal defendants.  The harm that Congress and courts have sought to avoid-needless pre-trial detention-does not apply in this case.  In [*United States v. Salerno*, 481 U.S. 739 (1987)], the Supreme Court stated that "Congress' careful delineation of the circumstances under which detention will be permitted" serves to protect "the individual's strong interest in liberty."  481 U.S. at 750-51.  Here, however, by ordering detention, the court is in no way restricting the defendant's liberty; [the defendant] will be detained by the Attorney General no matter what the court finds.  The only congruous result is one that allows the United States Attorney to prosecute the defendant], and, upon his release (either after trial, if not convicted, or after the expiration of the period of imprisonment, if imposed), to allow ICE to take [him] into custody for the purpose of deportation.  The result protects the constitutional rights of the accused as well as the strong interest of the Government in reasonably assuring the appearance of the defendant] as required. . . .

*Lozano*, 2009 WL 3834081 at *6 (footnotes omitted).[8]

------------------------------------------------

[8]      The undersigned actually finds the reasoning of the Magistrate Judge in *Lozano* more persuasive than the reasoning of the District Judge.  Magistrate Judge Walker held that the defendant should be held because the standard under the Bail Reform Act was the risk of non-appearance, not the risk of flight, and the existence of an ICE detainer against the defendant that likely would result in his removal from the United States was determinative on the issue of the defendant's likely appearance at trial.  *United States v. Lozano*, Cr. NO. 1:09cr158-WKW [WO], 2009 U.S. Dist. LEXIS

While a defendant's status as a deportable alien alone does not mandate detention, it is a factor which weighs heavily in the risk of non-appearance analysis. *United States v. Lozano-Miranda*, Criminal Action No. 09-cr-20005-KHV-DJW-5, 2009 WL 113407, *13 (D. Kan. Jan. 15, 2009).

The Bail Reform Act requires the Court to determine if there are conditions or combination of conditions that can reasonably assure the appearance of Ong at trial. The Court finds the conclusion in *Lozano* more persuasive than those reached in *Montoya-Vasquez* and *Barrera-Omana* for two reasons. First, the Court concludes that *Lozano* more accurately discusses the risk of non-appearance in the Bail Reform Act context. Second, to the extent that *Montoya-Vasquez* or *Barrera-Omana* accurately apply the Bail Reform Act, Ong's lack of ties to the United States and his status as a non-admitted alien distinguishes his case from the others, where each defendant had substantial ties to the prosecuting district.

Since (1) Ong has not been lawfully admitted to the United States, (2) conditional release to determine if ICE either will grant the defendant a bond or not

_____

86413, *14 (M.D. Ala. Sept. 21, 2009). Judge Walker also rejected the defendant's argument that the government created the risk of non-appearance by seeking to deport him, since the Bail Reform Act dos not consider as material the source of or reason for risk of nonappearance, only the fact of nonappearance. *Id.* at *20.

20

remove him is not an option, (3) Ong has no ties to the United States, and (4) he is subject to a detainer for his removal which will be acted upon if he is released from U.S. Marshal custody, the Court concludes that there is a great likelihood that Ong will be deported from the United States prior to the conclusion of any criminal proceedings against him.   Judge Kobayashi's release order does not reduce the risk of Ong's removal from the United States.   The $25,000 cash bond would inure to the government's benefit in the event Ong was not present for trial, but the government's interest is better served by having him present for trial rather than execute on the deposited funds.   Since Ong would likely be removed from the United States and not allowed to re-enter, being placed in the custody of Mrs. Ong would not increase the chances that Ong would appear for trial.   As a result, there are no conditions or set of conditions that will reasonably assure Ong's presence as required.

### *Conclusion*

Based on the foregoing, the undersigned **RECOMMENDS** that the government's motion to revoke the order of release, [Doc. 11], be **GRANTED**, that the order of release be **REVOKED**, and that Ong be **DETAINED** pending the resolution of the charges against him.

21

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED**, this the 29th day of November, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

22