IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 1:10-CR-352-JEC-AJB |
| | : | |
| JOHN DENNIS TAN ONG | : | |


### GOVERNMENT'S SENTENCING MEMORANDUM

John Dennis Tan Ong ("Defendant") stands convicted of conspiring to violate the Arms Export Control Act in violation of Title 18, United States Code, § 371 (Count One).

In 2008, the Department of Homeland Security, Immigration and Custom Enforcement("ICE")[1], began an investigation concerning the owner of an online store who sold and shipped export controlled gun parts and accessories to person located outside the United States without first obtaining the required export license.  During the course of that investigation, ICE learned that one of this supplier's customers was Ronnel Rivera ("Rivera"), who was initially a resident of Australia, but moved to the Philippines during the investigation.

---

[1] During the course of this investigation, the agency was known as ICE.  After this matter was indictment, this agency became known as the Department of Homeland Security, Homeland Security Investigations.

In July 2009, the Georgia supplier agreed to cooperate with ICE. Pursuant to that agreement, the supplier gave ICE access to the email account used to communicate with customers including Rivera. On July 8, 2009, an undercover agent, posing as the supplier, sent an email to Rivera advising that he was back in business.

Over the next few days, Rivera inquired about the availability of various gun parts and accessories. On July 13, 2009, Rivera placed an initial order for ten Colt Lower Receivers, five VLTOR Mur-1A Upper Receivers, ten Bolt Carrier groups (full auto), and ten M4/M16 Fire Control groups (full auto).

On this same day, the undercover agent informed Rivera that the items required an export license. Rivera responded that it would be hard to get a license, even in the Philippines. Rivera then asked about the best way to get the items shipped to him.

Through email correspondences, Rivera discussed interest in other various items. During the course of these communications, Rivera and the undercover agent also discussed how the gun parts should be shipped to the Philippines. On August 11, 2009, Rivera advised that he wanted his friend located in Los Angeles to handle the shipping. He claimed that this person previously shipped gun barrels and receivers to him. The friend turned out to be the John Dennis Tan Ong, the defendant.

The defendant, who was a citizen of Canada, owned and operated an export business called Cathay Auto Exports.  Even though the business was registered in Canada, the Defendant purchased mostly cars in the United States, and shipped them from California to the Philippines and to other places.

On September 14, 2009, Rivera sent an email to the Defendant in which Rivera asked whether the gun parts could be shipped to the Defendant.  The email also requested permission for Rivera to give the Defendant's email address to his supplier (the undercover agent).  The Defendant replied that he would accept the shipment and inquired about whether the parts should be included with the jet skis.

On September 17, 2009, the Defendant sent an email to the undercover agent which informed that RIVERA requested the Defendant to ship some parts.  The Defendant further provided a telephone number at which he could be contacted.  The next day, the Defendant and the agent spoke on the phone.  During this conversation, the Defendant advised that RIVERA had some items ready to be shipped to the Philippines and that he would include the gun parts among these items.

On December 3, 2009, Rivera sent an email to the Defendant in which he provided his revised and final list of gun parts ordered from the undercover agent.  Accordingly, Rivera ordered ten Colt M4A1 Lower Receiver Machined, five VLTOR Mur-1A Upper Receivers,

3

ten Rock River Arms Bolt Carrier groups (full auto), ten Rock River Arms select-fire trigger/fire controls for the AR15/M4 rifle (full auto), ten Receiver Extension Tubes for the AR 15/M4 rifle, eight Magpul PRS rifle stock for the AR15/M4 rifle, twenty Magpul 30 round magazines for the AR15/M4 rifle, and two M4-2000 Fast Attach 5.56 mm silencers.

Certifications obtained from the State Department's Directorate of Defense Trade Controls establish that all the gun parts and accessories are U.S. Munitions list items which require an export license before they can be shipped from the United States. A licensing history check for Rivera and the Defendant revealed that they never applied for or obtained an export license prior to or during the time relevant to this Indictment.

On December 4, 2011, 2011, the Defendant spoke to the undercover agent on the telephone and was advised that these gun parts were controlled and required an export license. After learning this, the Defendant stated that he would speak to Rivera and contact the undercover agent later.

On December 14, 2009 and after learning the unlawful nature of this transaction, the Defendant informed the undercover agent that Rivera asked him to forward payment for the items to the undercover agent. On this same day, Rivera wired $16,000 from the Philippines to the Defendant's bank account in the State of Washington.

On December 16, 2009, the Defendant wired $10,500.00 to the undercover agent's bank account in Atlanta, Georgia. Additionally, on this day, the Defendant sent an email to the undercover agent which provided a shipping address in California. The email further provided a name to be used as the addressee on the package. The name, however, was not the Defendant's name and it was a name that had never come up in previous communications.

The undercover agent expressed reluctance about sending the gun parts and accessories to this address in California given that the address didn't appear to be associated with the Defendant. In response, on or about December 18, 2009, the Defendant sent an email to Rivera addressing this concern. The Defendant advised that the undercover agent could file off the serial numbers on the parts before shipping them to California in order to make the parts difficult to trace back to the undercover Agent. The Defendant also indicated that the undercover Agent could ship the parts and accessories, then declare the items stolen after they were shipped so that the undercover agent could deny any knowledge if U.S. Customs discovered that the items were being shipped outside the United States.

On January 15, 2010, the Defendant sent an email to Rivera suggesting that the undercover agent ship the parts using a freight forwarder, which he referred to as a balikbayan box. The Defendant explained that the undercover agent should pack the box with canned

goods to make it harder for the gun parts to be detected on x-ray machines.  The Defendant also advised that the undercover agent would not have to use a real name when he shipped the package to the Philippines.

On February 14, 2010, Rivera sent an email to the undercover agent which included the Defendant's packing instructions and the other information provided by the Defendant, which included the cost of shipping the package to the Philippines along with the name and address of the freight forwarder in the Atlanta area.

## ARGUMENT

I.   THE DEFENDANT IS NOT ENTITLED TO A TWO LEVEL ADJUSTMENT PURSUANT TO U.S.S.G. § 3B1.2 BECAUSE HIS ROLE IN THE OFFENSE WAS NOT MINOR.

The defendant is seeking a two level downward adjustment pursuant to U.S.S.G. § 3B1.2 based on his contention that he was a minor participant in this offense.  The government respectfully requests this court to reject this argument.  The Defendant's argument is seemingly premised on the fact that he is the least culpable when compared to Rivera.  This, however, is not dispositive in determining the application of § 3B1.2.  When the defendant's role in this transaction is compared to the relevant conduct attributed to him in the Presentence Report, as this court must do, it clear that his participation was not minor.

6

Pursuant to United States Sentencing Guidelines, a defendant's offense level may be reduced by two levels if the defendant was a minor participant in the criminal activity. U.S.S.G. § 3B1.2(b). A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment.(n.5).

In deciding whether the defendant is entitled to this role adjustment, the district court should employ a two part analysis. First, the district court should evaluate the defendant's role in the offense "on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, Pt B, intro. comment.   The defendant bears the burden of proving by the preponderance of the evidence that his role in the conduct for which he has been held accountable in the Presentence Report, ("PSR"), was minor as contemplated by § 3B1.2. US v. DeVaron, 175 F.3d 930, 939 (11th Cir 1999).   If the defendant's actual conduct is more serious than his base offense level suggests, then the defendant will not meet his burden. Id. at 941.

Second, to the extent the record is sufficient and the analysis described above is not dispositive of the issue, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme. Id. at 944.

7

Again, this inquiry is limited to those persons who were involved in the relevant conduct attributed to the defendant. Id. The conduct of other persons in a broader, larger conspiracy is not relevant. Id. This limited approach is designed to prevent the sentencing courts from automatically finding that a defendant is entitled to a reduction in the offense level simply because he was somewhat less culpable than other participants. Id.

The district court "must assess all of the facts probative of the defendant's role in his relevant conduct" when making its determination. Id. at 942. However, it "has no duty to make any specific subsidiary factual findings." Id. at 939. It is only required to resolve disputed factual issues and to state its conclusion as to whether the adjustment for minor role in the offense is applicable. Id. The court's determination as to whether the defendant qualifies for the adjustment is a finding of fact that will be reviewed on appeal for clear error. Id. at 936.

In United States v. Stringer, 291 Fed. App'x 306 (11th Cir. 2008), the appellant pled guilty to Conspiracy to Defraud the United States, in violation of Title 18 United States Code, § 371; Unlawful Export of Property, in violation of Title 22, United States Code, § 2778(b)(2); and Theft of Government Property, in violation of Title 18, United States Code §§ 641 and 2. These charges stemmed from a conspiracy in which the appellant's co-defendant stole various U.S. Munitions list military equipment.

8

The items were turned over to the appellant, who sold the items over eBay and shipped them to persons in other countries.  <u>Id</u>. at 308.

On appeal, the appellant argued that she was entitled to minor role reduction pursuant to U.S.S.G. § 3B1.2 because her co-defendant obtained the parts, found people to assemble the parts, and set up the websites used to sell the items.  <u>Id</u>. at 310.  The appellant further argued that her role was limited to allowing her name and bank accounts to be used to facilitate payments, and to engaging in limited email correspondence with a customer.  <u>Id</u>. The Eleventh Circuit Court of Appeals rejected this argument.

Applying the principles set forth in <u>De Varon</u>, the Court concluded that the district court did not err when it denied the appellant's request for a reduction based on the role in the offense.  The Court, in reaching this conclusion, noted that the appellant had full knowledge of the conspiracy and was a full participant.

Similarly, the Defendant in the instant case had full knowledge of the fact that Rivera wanted him to facilitate the unlawful shipment of export controlled gun parts and accessories. The Defendant likewise allowed his bank account to be used to facilitate the payment for the purchase and shipment of the items. Specifically, the Defendant received a transfer of funds from Rivera in the Philippines, which he subsequently transferred from

his U.S. based bank account to the bank account of the undercover agent in Atlanta.

The Defendant also engaged in telephone and email communications with the undercover agent and Rivera to facilitate the actual shipment. He, among other things, provided to the undercover agent a shipping address in California. After the agent expressed reluctance about sending the items to this address, the Defendant was the one who located a freight forwarder in the metro-Atlanta area. The Defendant was the one who provided instructions on how to pack the items so to avoid detection by x-ray machines. The Defendant was the one who suggested to Rivera that the undercover agent scratch off the serial numbers on the items to make it difficult to trace them back to the undercover agent. The Defendant was the person who suggested that the undercover agent ship the package to the Defendant and then declare the box stolen so the undercover agent would have a basis for denying any knowledge concerning the shipment of the items from the United States. Accordingly, his actual role could hardly be described as minor.

The Defendant additionally fails to met his burden because his actual conduct is more serious than his base offense level suggests. The defendant's base offense level for conspiring to violate the Arms Export Control Act is calculated based on the application of U.S.S.G. § 2M5.2 (a)(1). Accordingly, the base

offense level is 26.  With a Criminal History Category I and after a three level reduction for Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1, the resulting advisory sentencing guidelines range is 46-57 months.

Included in the defendant's § 1B1.3 relevant conduct for the conspiracy offense is the fact that the defendant agreed to and did in fact facilitate the transfer of funds from the Philippines to the United States to promote the unlawful export of gun parts and accessories.  This conduct constituted a violation of Title 18, United States Code, § 1956(h), which charges Conspiracy to commit Unlawful Money Transfer.  The base offense level for this violation starts at level 28[2].  After applying a three level reduction for Acceptance of Responsibility, the resulting advisory guidelines range for Criminal History Category I is 57 to 71 months. Accordingly, the Defendant's negotiated plea provides for a sentence below what he would have otherwise receive based on the relevant conduct actually attributed to him in the PSR.  Thus, the Defendant fails to meet his burden of establishing that his role in this offense was minor.

---

[2] The base offense level is determined by applying the offense level for the unlawful activity promoted by the financial transaction.  U.S.S.G. § 2S1.1(a)(1).  Another two levels is added this offense level because the offense involved a violation of Title 18, United States Code, § 1956.  U.S.S.G. § 2S1.1(b)(2)(B).

II.  A SENTENCE WITHIN THE ADVISORY GUIDELINES RANGE IS
     REASONABLE.

In considering the appropriate sentence to impose, the district court will consider the factors set forth at Title 18, United States Code, § 3553(a).  The factors the court must consider include "(1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (4) the need to protect the public; and (5) the Guidelines range." United States v. Scott, 426 F.3d 1324, 1328-29 (11th Cir.2005)(citing 18 U.S.C. § 3553(a)).  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court."  United States v. Williams, 456 F.3d 1353, 1363 (11th Cir.2006).

As an initial matter, the Defendant may attempt to persuade the district court that the applicable advisory guidelines range overstates the seriousness of his conduct.  This argument should be rejected. The imposition of a sentence falling far outside of the advisory guidelines range, based on the § 3553(a) factors, is "an extraordinary reduction" that "must be supported by extraordinary circumstances." United States v. McVay, 447 F.3d 1348, 1357 (11th Cir.2006).  There are no extraordinary circumstances in the instant matter warranting this extraordinary remedy.  After considering

12

the section 3553(a) factors, an advisory guidelines sentence is appropriate[3].

A.   An Advisory Guidelines Sentence Reflects the Seriousness of Defendant's Conduct, The Nature and Circumstances of the Offense.

Section 2M5.2(a)(1) of the United States Sentencing Guidelines provides that the base offense level for violating the Arms Export Control Act is 26[4]. As Application Note 1 provides, "[t]he base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States." U.S.S.G. § 2M5.2, Application Note 1. Furthermore, "[i]n determining the sentence within the applicable guidelines range, the court may consider the degree to which the violation threatened a security or foreign policy interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences." U.S.S.G. § 2M5.2, Application Note 2.

In United States v. Sero, 520 F.3d 187 (2nd Cir. 2008), the defendant pled guilty to one count in a four count indictment which

_____

[3] The government's requests a two level departure based on the Defendant's substantial assistance. When this is applied to the Defendant's total offense level of 23, the adjusted offense level will be 21. With a Criminal History Category I, the resulting advisory guidelines range will be 37 to 46 months imprisonment. The government respectfully requests a sentence at the low end of this adjusted guidelines range.

[4] If the offense involved ten or less non fully automatic firearms, then the base level is 14. U.S.S.G. § 2M5.2 (a)(2).

charged him with exporting from the United States to the Philippines gun parts and ammunition in violation of the Arms Export Control Act and the International Trafficking in Arms Regulations.  Id. at 189.  The defendant in Sero argued that his base offense level should be 14 because the higher offense level, which is offense level 26, should only apply to more sophisticated weapons and to more serious offenses.  Id. at 190.  The defendant believed that the shipment of only gun components and ammunition should not be treated more harshly than a shipment containing ten actual firearms.  The Second Circuit Court of Appeals rejected his argument.  The Appellate Court concluded that the lower offense level did not apply, in part, because the defendant exported components that were capable of servicing more than ten fully or non-fully automatic weapons.  Sero, 520 F.3d at 191.

The Appellate Court additionally noted that Application Note 1 of the U.S.S.G. § 2M5.2 states that: "[u]nder 22 U.S.C. § 2778, the President is authorized ... to control exports of defense articles.... The items subject to control constitute the United States Munitions List, which is set out in 22 C.F.R. Part 121.1." U.S.S.G. § 2M5.2 Application Note 1.  Since the items the defendant exported were listed on the U.S. Munitions List and were not completed firearms as contemplated by subsection 2M5.2(a)(2), the Appellate Court found that the district court applied the

appropriate offense level[5].

Applying the analysis of Sero to the instant matter, it is clear that the Defendant should be sentenced pursuant U.S.S.G. § 2M5.2(a)(1).  The export licensing regulations were implemented under the President's authority to control the export of defense articles and dual use items in furtherance of the national security and foreign policy of the United States.  See 22 U.S.C. § 2778 (a)(1) and 50 U.S.C. § 2402(2).  The penalties set forth in the advisory guidelines reflect the need to ensure that the President's authority is not undermined.  Moreover, the President will lose this authority if every violator who is similarly situated as the defendant in Sero and the Defendant in the instant case can avoid the prescribed penalty by asserting that their conduct was not as serious  because  they  only  shipped  parts  or  accessories. Accordingly, an advisory guidelines sentence in this matter will take  into  consideration  the  nature  of  the  offense  and  it  will reflect the seriousness of the Defendant's conduct.

B.   An Advisory Guidelines Sentence Takes Into
Consideration The History and Characteristic of the
Defendant.

Other  factors  this  court  will  consider  in  determining  the appropriate sentence to impose are the history and characteristics

---

[5] It should be noted that the Court in Sero took into consideration the number and type of commodities involved when it considered the section 3553(a) factors.  Instead of granting an extraordinary departure, it imposed a sentence six months below the advisory guidelines range.

of the defendant.   In doing so, the court is required to consider
relevant evidence that bears directly on this issue.   This includes
the consideration of unindicted conduct.   Accordingly, the court
may consider uncharged conduct as long as the conduct is
established by a preponderance of the evidence[6].   United States v.
Watts, 519 U.S. 148, 117 S. Ct. 633, 136 L. Ed. 2d 554 (1997); and
United States v. Beasley, 322 Fed. App'x 777 (11th Cir.
2009)(finding that even if uncharged robberies were separate
incidents unconnected to the instant conviction for armed bank
robbery, the court was required to consider defendant's history
before determining sentence and could consider any relevant facts
concerning defendant's background, character and conduct when
imposing a reasonable sentence); see also United States v. Faust,
456 F.3d 1342 (11th Cir. 2006)(noting that conduct for which
defendant was acquitted my be considered in sentencing for offense
of conviction if such conduct is proven by a preponderance of the
evidence).   The Government proffers that the Defendant's relevant
history includes other uncharged violations which occurred during
a period close in time to the transaction alleged in the
Indictment[7].   After considering the Defendant's history and
characteristics along with the other section 3553(a) factors, an

---

[6] The government will present testimony from one witness to
establish this similar conduct.

[7] The Government intends to call one witness to establish
the other uncharged conduct for the court's consideration.

advisory guidelines sentence should be imposed.

<u>CONCLUSION</u>

For the above and foregoing reasons, the government respectfully requests that this court find that the defendant was not a minor participant pursuant to U.S.S.G. § 3B1.2 PSR and to impose a sentence within the advisory sentencing guidelines.


Dated this 13th day of December, 2011.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


<u>/S/ TRACIA M. KING</u>
TRACIA M. KING
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 421380

600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
(404)581-6305
(404)581-6181 (Fax)

17

CERTIFICATE OF SERVICE


This is to certify that I have this day served upon the person listed below a copy of the foregoing document via the Electronic Case Filing ("ECF") system of the United States District Court for the Northern District of Georgia, which will automatically send an e-mail notification of such filing to the following attorney of record:


John A. Garland
Garland, Samuel & Loeb, P.C.
3151 Maple Drive
Atlanta, GA 30305
Phone: (404) 262-2225
Fax: (404) 365-3373
jag@gsllaw.com


This 13th day of December, 2011.


/S/ TRACIA M. KING
TRACIA M. KING
ASSISTANT UNITED STATES ATTORNEY